UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GOPAL B.,[1]

       Petitioner,

    v.

SERGIO ALBARRAN, et al.,

       Respondents.

No. 1:26-cv-01083-TLN-CKD

**ORDER**

    This matter is before the Court on Petitioner Gopal B.'s ("Petitioner") Motion for Temporary Restraining Order ("TRO"). (ECF No. 2.) Respondents filed an opposition. (ECF No. 10.) Petitioner filed a reply. (ECF No. 11.) For the reasons set forth below, Petitioner's motion is GRANTED in part. Respondents are enjoined from continuing to detain Petitioner for more than seven days without a bond hearing.

///

///

---

[1]    As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.    FACTUAL BACKGROUND[2]

The instant action arises from Petitioner's allegedly unlawful detention.  (*See* ECF No. 1.) Petitioner is a 39-year-old national of Nepal who came to the United States in February 2024 and has resided in San Francisco, California since April 2024.  (ECF No. 2 at 8.)  Petitioner fled Nepal due to political violence and threats.  (*Id.* at 9.)  Petitioner turned himself in to immigration officials at or near the border on February 23, 2024.  (*Id.*)  The officials processed him for removal proceedings and released him within approximately two days.  (*Id.*)

Petitioner first moved to Seattle, where he lived for a month with a cousin before moving to San Francisco in April 2024 to join his younger brother, who also fled Nepal and was living in San Francisco.  (*Id.*)  Petitioner lived with his brother and their two adult extended relatives.  (*Id.*)

Petitioner applied for work authorization, which was approved on December 19, 2024. (*Id.*)  Petitioner works part-time as a cashier at a convenience store in San Francisco and works additional shifts at night as a licensed security guard at a residential building.  (*Id.*)

Petitioner had multiple check-ins with U.S. Immigration and Customs Enforcement ("ICE"), first in Seattle and then in San Francisco.  (*Id.*)  After one check-in, he was told to report back in another year, but forgot the date and his attorney did not remind him about the date.  (*Id.*) Petitioner realized after the fact that he had missed the check-in and asked his attorney to contact ICE regarding the missed appointment.  (*Id.*)  The attorney helped him contact ICE around June 2025 and he was scheduled for a follow-up appointment on December 8, 2025.  (*Id.*)

On or about October 1, 2025, Petitioner returned from work to find his nephew drinking with two of the nephew's friends in their apartment for a Nepali festival.  (*Id.*)  Petitioner joined the festivities and they all became intoxicated.  (*Id.*)  At some point, Petitioner and his nephew started arguing.  (*Id.*)  The dispute turned physical, the police were called, and Petitioner was arrested.  (*Id.*)

On October 3, 2025, Petitioner was arraigned in criminal court on assault and battery charges.  (*Id.*)  He pleaded not guilty and was released from custody on his own recognizance the

---

[2]    The instant factual background is taken largely verbatim from Petitioner's motion for TRO.  (ECF No. 2.)   Respondents do not contest these facts.  (*See generally* ECF No. 10.)

same day. (*Id.* at 9–10.) Petitioner abided by the court orders and appeared at future hearings on November 7, 2026 and November 26, 2026. (*Id.* at 10.) On December 22, 2025, Petitioner pleaded no contest to one count of misdemeanor battery and was placed on misdemeanor probation for one year with a requirement to complete an anger management class. (*Id.*)

On December 8, 2025, Petitioner reported to his regular ICE check-in as required. (*Id.*) At that time, he was taken into ICE custody and transferred to the California City ICE detention center. (*Id.*)

On February 6, 2026, Petitioner filed the instant action, challenging the lawfulness of his prolonged civil detention and seeking immediate release or a bond hearing in the alternative. (ECF No. 1 at 16–17.)

## II.     STANDARD OF LAW

For a TRO, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

///

///

///

3

**III.   ANALYSIS**

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

A.   Likelihood of Success on the Merits

Petitioner argues he is likely to succeed on his claim that the Fifth Amendment Due Process Clause prevents Respondents from re-arresting him without first providing a pre-deprivation hearing before a neutral adjudicator.  (ECF No. 2 at 11.)  In opposition, Respondents argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) ("§ 1226(c)") and detention under § 1226(c) is constitutional.  (ECF No. 10 at 2–6.)  In reply, Petitioner asserts § 1226(c) does not apply to him because the charges that fall under that statute were dismissed and application of § 1226(c) to him is unconstitutional.  (ECF No. 11 at 2–7.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i.   Liberty Interest*

As for the first step, the Court finds Petitioner has established a protectable liberty interest.  A person who has been released from physical restraint gains a "liberty [interest that] is valuable and must be seen as within the protection of the" Due Process Clause.  *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).  "Even when a statute authorizes detention without a hearing, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute." *Carballo v. Andrews*, No. 1:25-CV-00978-KES-EPG, 2025

4

WL 2381464, at *5 (E.D. Cal. Aug. 15, 2025) (citing *Morrissey*, 408 U.S. at 482; *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *Young v. Harper*, 520 U.S. 143, 147–49 (1997)); *see also Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause").

Here, Petitioner gained a protected liberty interest in his continued freedom when he was released on parole in February 2024. (ECF No. 2 at 9.) As this Court and numerous other courts have concluded, individuals who have been released from immigration custody have a protected liberty interest in remaining out of custody. *See, e.g.*, *Acosta v. Warden of the Golden State Annex Detention Facility*, No. 1:26-cv-00530-TLN-EFB, 2026 WL 350831, at *3 (E.D. Cal. Feb. 9, 2026); *Singh v. Chestnut*, No. 1:26-cv-00546-DJC-AC, 2026 WL 266021, at *2 (E.D. Cal. Feb. 2, 2026) (citing cases). The parties do not dispute Petitioner was previously released on his own recognizance pursuant to 8 U.S.C. § 1226 and Petitioner remained out of custody until he was re-arrested on December 8, 2026. Thus, the Court finds Petitioner has an established liberty interest in his continued freedom.

Respondents argue Petitioner is subject to detention under 8 U.S.C. § 1226(c) because of his arrest for violation of California Penal Code § 243(d), felony battery with serious bodily injury. (ECF No. 10 at 2.) Respondents note that although Plaintiff later pleaded guilty to simple battery, a plain reading of § 1226(c)(E)(ii) only requires Petitioner to be arrested or charged with a qualifying offense. (ECF No. 10 at 3.) In reply, Petitioner asserts that district courts have held § 1226(c)'s present-tense language applies only to noncitizens *currently* facing charges that would otherwise implicate the statute. (ECF No. 11 at 3 (citing *Singh*, 2026 WL 266021; *Santiago Helbrum v. Williams, et al.*, No. 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273, at *1 (D. Iowa Sept. 30, 2025)).) Petitioner notes the only charge he was convicted for was misdemeanor battery, an offense that would not subject him to mandatory detention under § 1226(c). (*Id.* at 3–4.) Petitioner maintains he is not subject to mandatory because he was *charged* with a crime when those charges have been dismissed. (*Id.* at 4.)

///

Indeed, § 1226(c) provides mandatory detention of a noncitizen if the noncitizen "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]"  8 U.S.C. § 1226(c)(1)(E)(ii).  If Petitioner is indeed subject to mandatory detention, then his liberty interest would be significantly reduced.  Section 1226(c), on its face, appears to apply to Petitioner as he was arrested for one of the enumerated crimes in § 1226(c)(1)(E)(ii), namely, a violation of California Penal Code § 243(d), felony battery with serious bodily injury.  However, as the parties note, Petitioner pleaded guilty to misdemeanor battery in violation of California Penal Code § 242, and the felony charges were dismissed.  (ECF No. 10 at 2–3; ECF No. 11 at 2–3.)  Requiring mandatory detention because of a mere arrest and charge, which prosecutors eventually dismissed after Petitioner pleaded guilty to a lesser charge, raises significant due process concerns.  As another court in the Eastern District noted, "[t]o avoid those concerns, courts have construed [§ 1226(c)] to apply only where an individual is *currently* charged with or arrested for the enumerated crimes, and concluding mandatory detention is not required when charges are never filed . . . or where an individual has been acquitted."  *Singh*, 2026 WL 266021, at *2 (citing cases).  The Court is therefore not persuaded at this juncture about the application of § 1226(c) to Petitioner's case.[3]

Accordingly, the foregoing does not change the Court's conclusion that Petitioner retains a liberty interest in his release from immigration detention protected by the Due Process Clause.  *See Zadvydas*, 533 U.S. at 690.  The Court next considers what process was owed to Petitioner before depriving him of his liberty.

///

///

---

[3]   Accordingly, the Court declines to consider the parties' arguments at this juncture about whether Petitioner's detention under § 1226(c) is constitutional.  (ECF No. 10 at 3–6; ECF No. 11 at 4–7.)  Moreover, this Court has recently agreed with other courts in the Ninth Circuit that detention without a bond hearing under § 1226(c) is unconstitutional.  *See Jose G. M. L. v. Warden of Golden State Annex,* No. 1:26-CV-00047-TLN-EFB, 2026 WL 472987, at *3 (E.D. Cal. Feb. 19, 2026).

6

*ii.    Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 333 (internal quotations omitted). The Court finds these factors favor a bond hearing at minimum.

First, Petitioner has a substantial private interest in remaining free from detention, as discussed above. Petitioner asserts that since his release, he has engaged in a productive life surrounded by his family and friends, he has a stable job, he spends time with his brother and extended family members, and he has applied for asylum and is awaiting a hearing on that application. (ECF No. 2 at 14.) Thus, Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly); *Perera v. Jennings* (*Perera II*), 598 F. Supp. 3d 736, 745 (N.D. Cal. 2022) ("Any length of detention implicates the same fundamental liberty interest in remaining free from imprisonment.") (cleaned up) (quoting *Rajnish v. Jennings*, 2020 WL 7626414, at *6 (N.D. Cal. Dec. 22, 2020)).

Second, the Court finds the risk of erroneous deprivation is considerable where Petitioner has received virtually no procedural safeguards such as a bond or custody redetermination hearing. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). This is particularly so in light of the fact that Petitioner was previously released from immigration custody and on his own recognizance from state custody after his arrest. (ECF No. 2 at 7, 9.) The current record shows a neutral arbiter has found Petitioner was not a danger to the community both before and after his October 2025 arrest. Without a redetermination that Petitioner's detention is justified and weighing Petitioner's current circumstances before an

immigration judge, the risk of erroneous deprivation is high. *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community.").

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are negligible. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). "While the Government's interest in enforcing the nation's immigration laws is significant, that interest is not at stake here; instead, it is the much lower interest in detaining [Petitioner] pending removal without a bond hearing." *Perera II*, 598 F. Supp. 3d at 746 (citing *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019)). "Requiring the government to provide [Petitioner] with a bond hearing does not meaningfully undermine the government's interest in detaining non-citizens who pose a danger to the community or are a flight risk." *Perera v. Jennings, et al.* (*Perera I*), No. 21-CV-04136-BLF, 2021 WL 2400981, at *5 (N.D. Cal. June 11, 2021). Here, there is no final order of removal for Petitioner. As discussed above, no neutral arbiter has found Petitioner to be a danger to society or a flight risk. Moreover, the cost and time of procedural safeguards are minimal here. As Petitioner correctly notes, bond hearings are routine processes for Respondents and carry minimal burden. (ECF No. 2 at 19, 22.)

On this record, the *Mathews* factors demonstrate that the Fifth Amendment Due Process Clause entitled Petitioner to a bond hearing post-detention, at a minimum. *See Carballo*, 2025 WL 2381464, at *8. Respondents have not provided such a hearing and are continuing to deny him one. Therefore, Respondents have denied Petitioner the "fundamental requirement of due process . . . the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333. Hence, Petitioner is likely to succeed on his claim that his detention without a bond is unconstitutional.

### B. Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of relief. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration

8

detention," including "the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995. Petitioner highlights the foregoing (ECF No. 2 at 23), and such harm is present here. Without relief, Petitioner faces the prospect of significant additional time in detention and continued harm while he awaits a decision on his immigration proceedings. Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Thus, Petitioner has sufficiently established irreparable harm.

### C.    Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds these factors also favor Petitioner. First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted). Any burden imposed by requiring Respondents to comply with constitutionally required process is both *de minimis* and clearly outweighed by the substantial harm Petitioner will suffer if he continues to be detained without due process. In sum, these last two factors weigh in Petitioner's favor.

### IV.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for TRO (ECF No. 2) is GRANTED in part:

    a. Respondents are ENJOINED and RESTRAINED from continuing to detain Petitioner for more than **seven days** from the date of this Order without a bond

hearing before a neutral fact-finder at which Respondents bear the burden to justify Petitioner's detention by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. *See Perera I*, 2021 WL 2400981, at *6 (explaining basis for burden). The fact-finder must also consider Petitioner's financial circumstances for bond and alternative conditions of release. *See Hernandez*, 872 F.3d at 991. At any such hearing, Petitioner shall be allowed to have counsel present. If Petitioner is not found to be a danger to society or flight risk, Respondents must immediately release Petitioner. Respondents may impose any restrictions or conditions determined to be necessary by the neutral fact-finder at the hearing.

b. Within **eight days** from the date of this Order, Respondents must file a notice of compliance with this Court's Order and, if a bond hearing was held, identify the outcome of the hearing.

c. If Petitioner is released, Respondents are further ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future. At any such hearing, Petitioner shall be allowed to have counsel present.

2. Respondents are ORDERED TO SHOW CAUSE why the Court should not grant Petitioner's habeas petition and enter judgment in favor of Petitioner. Respondents shall file responsive papers within **eight days** from the date of this Order. Failure to timely file an answer/return will be construed as a non-opposition under L.R. 230(c). Petitioner may file a reply within **twelve days** from the date of this Order. The parties shall indicate in their briefing whether they request a hearing. The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule.

3. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. *See Diaz v.*

10

*Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

IT IS SO ORDERED.

Date: February 23, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

11